H. M. MORRIS v. THE SEASHORE TRANSPORTATION COMPANY,
a Corporation.

(Filed 20 November, 1935.)

Automobiles C i: Negligence B b—Evidence held sufficient to be submitted to jury under doctrine of last clear chance.

The evidence tended to show that plaintiff, in order to avoid striking a chicken standing on the hard surface of the highway, drove his automobile gradually to the left, so that the car was traveling in about the center of the highway at the time of the accident in suit, and that a bus belonging to defendant was traveling in the same direction and hit plaintiff's car when the bus attempted to pass. *Held:* Conceding plaintiff was negligent in driving to the left without giving any signal or ascertaining if the car could be driven to the left in safety, N. C. Code, 2621 (59), defendant's motion to nonsuit was erroneously granted, since the pleadings and evidence are sufficient to raise the issue of the last clear chance upon the evidence tending to establish defendant's negligence in failing

to keep a safe distance between the vehicles, N. C. Code, 2621 (57), and in failing to take the precautions and give the signals required by statute for passing cars on the highway, N. C. Code, 2621 (54) (55).

DEVIN, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Parker, J.,* at May Term, 1935, of LENOIR. Reversed.

This is an action for actionable negligence, brought by plaintiff against defendant, alleging damage.

The action is for personal injuries and for property damage alleged to have resulted from the negligent operation of one of defendant's passenger buses in the manner set forth in the complaint. The defendant filed answer denying the material allegations of negligence and set up the plea of contributory negligence, and as further defense alleges: "That the plaintiff, if he was damaged or injured, which is not admitted, contributed to such damage or injury by suddenly and without warning driving his automobile to the left and in front of the bus of the defendant as the bus was properly attempting to pass the plaintiff's automobile."

The plaintiff testified, in part: "The road right in front of the filling station is practically level, least bit slanting before you get to the brink of the hill. From the filling station to the brink of the hill is 30 yards, I guess. From the filling station to the paved portion of the highway is about ten feet, I would judge, 8 to 10 feet. The road at that point, the dirt portion of the road, on the day on which the accident occurred, was good and level. It was a bright sunshiny day, the road was dry. From the filling station to the brink of the hill is 30 yards, I guess. There was nothing ahead of me that I saw, I think I saw everything except there was a chicken. No vehicle of any sort. From the filling station back toward my home the road is practically right straight for the first 400 or 500 yards. It is as level as the average hard surface road. The road is so constructed that one can see, unless there are some other automobiles, the filling station and the road plainly for 400 or 500 yards before you get to the filling station. After I left home the first 300 or 400 yards, until I got started off, I could not say about my speed, but from 400 or 500 yards from Loftin's Station on to this place I was running about 40 or 45 miles an hour. When I got in about between 40 or 50 yards of Mr. Loftin's filling station, I saw the chicken on the paved road, on the hard surface part; he was about 2 or 3 feet on the pavement. On my right side, straight in front of me. I took my feet from the accelerator and put my left foot to the brake pedal, did not put on any brake, got ready and begun taking a slight turn to about the middle of the road for the next 40 or 45 yards. My right-hand side of my car

from the right edge of the pavement when I got where the chicken was was about 5 or 6 feet. The width of the pavement at that point is 16 feet. At the point about where the chicken was I was practically in the center of the paved portion of the road. During my gradual turn to the left, covering, I say a distance of 40 to 60 yards, I did not hear any horn or any other warning of the approach of an automobile or truck or bus. I had not observed the approach of any other motor vehicle at that time. The first indication I had that there was any vehicle of any sort back of me was when I reached the point about where the chicken was, attempting to slightly turn to the middle of the road, thinking it would get on off, and I would avoid hitting him; I was nearly opposite the further corner of the filling station when something went off just like an explosion, a loud explosion, and I passed out and did not know anything else for some time. . . . I was turning to my left, figuring that the chicken would go on in the yard and I would avoid hitting him. I was going from the right over toward the left side. I got about where the chicken was, I say my right-hand wheel was five or six feet from the right edge of the pavement. My right wheels were six feet from the right edge of the pavement, because I turned into my left to keep from hitting the chicken. I slightly turned to the left. I had turned into the left when my car was hit by something. Near the center of the road. I had turned gradually to my left before I got to where the chicken was; I might have been slightly further. I was about at the center of the road."

At the conclusion of the plaintiff's evidence the action was dismissed as of nonsuit, from which judgment the plaintiff excepted, assigned error, and appealed to the Supreme Court.

*Shaw & Jones for plaintiff.*
*Douglass & Douglass and John G. Dawson for defendant.*

CLARKSON, J. The only question involved upon this appeal is whether the court below erred in sustaining the defendant's motion of nonsuit, at the close of plaintiff's evidence. C. S., 567. We are of the opinion that there was error in the court's granting the motion.

N. C. Code, 1935 (Michie), sec. 2621 (59), is as follows: *"Signals on starting, stopping, or turning:* (a) The driver of any vehicle upon a highway, before starting, stopping, or turning from a direct line, shall first see that such movement can be made in safety and if any pedestrian may be affected by such movement shall give a clearly audible signal by sounding the horn, and whenever the operation of any other vehicle may be affected by such movement shall give a signal as required in this section plainly visible to the driver of such other vehicle of the intention to

make such movement. (b) The signal herein required shall be given by means of the hand and arm in the manner herein specified, or by any approved mechanical or electrical signal device, except that when a vehicle is so constructed or loaded as to prevent the hand and arm signal from being visible both to the front and rear the signal shall be given by a device of a type which has been approved by the department. Whenever the signal is given the driver shall indicate his intention to start, stop, or turn by extending the hand and arm from and beyond the left side of the vehicle as hereinafter set forth. Left turn—hand and arm horizontal, forefinger pointing. Right turn—hand and arm pointing upward. Stop—hand and arm pointing downward. All signals to be given from left side of vehicles during last fifty feet traveled."

Conceding that plaintiff was guilty of contributory negligence in not observing the rule of the road, and was to some extent on the wrong side, yet there are other provisions applicable on the facts in this case. N. C. Code, 1935 (Michie), secs. 2621 (54), 2621 (55). Also sec. 2621 (57), which is as follows: *"Following too closely*—(a) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent with regard for the safety of others and due regard to the speed of such vehicles and the traffic upon the condition of the highway."

The defendant's bus was traveling behind the automobile of plaintiff. It was the duty of the driver to use due care in following and passing—such care as an ordinarily careful and prudent man would exercise under like and similar circumstances, to avoid the injury. This was a question for the jury—the last clear chance doctrine. Of course, if plaintiff's negligence was the proximate cause of the injury, he cannot recover. We think the complaint, construed liberally, would permit of this issue of last clear chance.

In Shirley's Leading Cases in the Common Law, 3d Ed., pp. 269-270, referring to *Davies v. Mann,* 10 M. & W., 546, is the following: "The owner of a donkey fettered its forefeet, and in that helpless condition turned it into a narrow lane. The animal had not disported itself there very long when a heavy wagon belonging to the defendant came rumbling along. It was going a great deal too fast, and was not being properly looked after by its driver; the consequence was that it caught the poor beast, which could not get out of the way, and killed it. The owner of the donkey now brought an action against the owner of the wagon, and, in spite of his own stupidity, was allowed to recover, on the ground that *if the driver of the wagon had been decently careful the consequences of the plaintiff's negligence would have been averted.* 'Although,' said Parke, B., 'the ass may have been wrongfully there, still the defendant was bound to go along the road at such a pace as would be likely to prevent mischief. Were this not so, a man might justify the driv-

ing over goods left on a public highway, or even over a man lying asleep there, or the purposely running against a carriage going on the wrong side of the road.' But *Davies v. Mann* engrafts an important qualification on the rule that the negligence of the plaintiff himself disentitles him to complain of the defendant's negligence. *If the defendant by being ordinarily careful would have averted the consequence of the plaintiff's negligence*—in other words, if the regrettable accident would never have happened, if the defendant had behaved as he ought to have done— then the plaintiff is entitled to recover in spite of his negligence.   .   .   . The donkey case qualification may be put as correctly and more simply by saying that a plaintiff is not disentitled by his negligence unless such negligence was the *proximate cause* of the damage."

*Brogden, J.,* in *Redmon v. R. R.,* 195 N. C., 764 (766-7), speaking to the subject, clearly sets forth the doctrine of last clear chance, as follows: "When must the trial judge submit an issue of last clear chance to the jury?   The last clear chance doctrine is the duty imposed by the humanity of the law upon a party to exercise ordinary care in avoiding injury to another who has negligently placed himself in a situation of danger.   The doctrine is said to have sprung from the celebrated case of *Davies v. Mann,* 10 M. & W., 546, decided in 1842, and is commonly known as the hobbled ass case.   .   .   .   The principle announced has been clearly stated by *Stacy, J.,* in *Haynes v. R. R.,* 182 N. C., 679, 110 S. E., 56, as follows: 'It has been held uniformly with us that, notwithstanding the plaintiff's contributory negligence, if the jury should find from the evidence that the defendant, by the exercise of ordinary and reasonable care, could have avoided the injury, and failed to do so, and had the last clear chance to so avoid it, then the defendant would be liable in damages.'   To the same effect is the utterance of *Brown, J.,* in *Cullifer v. R. R.,* 168 N. C., 309, 84 S. E., 400: 'It is well settled in this State that where the plaintiff is guilty of contributory negligence the defendant must exercise ordinary care and diligence to avoid the consequences of the plaintiff's negligence, and if by exercising due care and diligence the defendant can discover the situation of the plaintiff in time to avoid injury, the defendant is liable if it fails to do so.'" *Gunter v. Wicker,* 85 N. C., 310; *Wheeler v. Gibbon,* 126 N. C., 811; *Ray v. R. R.,* 141 N. C., 84; *Casada v. Ford,* 189 N. C., 744; *Caudle v. R. R.,* 202 N. C., 404.

For the reasons given, the judgment must be
Reversed.

DEVIN, J., took no part in the consideration or decision of this case.